**UNITED STATES of America, Appellee,**

v.

**Gary SAKNIKENT, Appellant.**

No. 93–3880.

United States Court of Appeals, Eighth Circuit.

Submitted May 13, 1994.

Decided July 28, 1994.

Timothy Thomas, Rapid City, SD, argued, for appellant.

Steven Douglas Rich, Rapid City, SD, argued (Karen E. Schreier and Mary P. Thorstenson, on the brief), for appellee.

Before BOWMAN, Circuit Judge, HEANEY, Senior Circuit Judge, and BEAM, Circuit Judge.

BEAM, Circuit Judge.

Gary Saknikent appeals the district court's[1] application of an abduction enhancement to his sentence for the rape and sodomy of a mentally-retarded nine-year-old girl. We affirm.

## I. BACKGROUND

The victim of this crime was hydrocephalic as an infant. As a result, her mental development is substantially below normal. At the time of the crime, she lived about half a block from a convenience store, where she was a well-known visitor for whom special care was taken. On the day of the rape, the victim visited the store while Saknikent was purchasing gasoline for his pickup. Shortly thereafter, the victim disappeared. She was found hours later and miles out of town, walking with Saknikent whose pickup had run out of gas. Her genitalia were severely lacerated, and she was bleeding profusely from her vagina and anus. Saknikent was arrested. After indictment, Saknikent entered a guilty plea to aggravated sexual abuse under 18 U.S.C. §§ 1153 and 2241(c).

At sentencing, the district court applied United States Sentencing Guideline 2A3.1. The court found a base level of 27, to which it added four levels under USSG § 2A3.1(b)(1) for the use of force in committing the crime, four levels under (b)(2) because the victim was under twelve, and another four levels under (b)(5) for abduction. After deducting three levels for acceptance of responsibility, the district court arrived at a total offense level of 36. When combined with Saknikent's criminal history category of VI, this offense level resulted in a guidelines range of 324 to 405 months. The district court imposed the minimum sentence. Saknikent argues that applying the abduction adjustment was error. Without that adjustment the applicable guidelines range would have been 210 to 262 months, or at least five years less than the sentence imposed.

## II. DISCUSSION

■ We review the district court's finding of facts for clear error and its application of the guidelines to the facts de novo, giving due deference to the district court's application of the guidelines. *See United States v. Claymore,* 978 F.2d 421, 423 (8th Cir.1992); *United States v. Johnson,* 906 F.2d 1285, 1290 (8th Cir.1990). Application of the abduction adjustment requires that there be a preponderance of evidence showing that Saknikent "abducted" his victim. *See United States v. Dinges,* 917 F.2d 1133, 1135 (8th Cir.1990). Saknikent claims that the evidence was insufficient to do so. He bases this argument both on the state of the evidence and on the guidelines definition of "abduction," set out in guideline section 1B1.1, application note 1(a):

"Abducted" means that a victim was forced to accompany an offender to a different location. For example, a bank robber's forcing a bank teller from the bank into a getaway car would constitute an abduction.

According to Saknikent, there is no evidence that he forced his victim to accompany him and therefore the adjustment cannot be applied to him.

■ We disagree.[2] We think that Saknikent reads the definition of "abduction" too narrowly. What situations are "abductions" depend on how the term "force" is defined. According to Saknikent, "force" in application note one means actual physical force. He argues that although "kidnapping" may be carried out by trick, luring, or means other than a physical attack, the example given in the application note indicates that "abduction" for guidelines purposes should be limited to situations involving a physical assault of some sort. We find this contention untenable.

Abduction increases the gravity of sexual assault or other crimes because the perpetrator's ability to isolate the victim increases the likelihood that the victim will be harmed. Any concomitant assault is tangential to the rationale for the increased penalty. Also,

---

1. The Honorable Richard H. Battey, United States District Judge for the District of South Dakota.

2. Like the district court, we have been unable to find cases directly addressing this point.

"forced" does not necessarily imply a physical assault. To "force" means to compel "by physical, moral, or intellectual means," or "to impose" or "to win one's way." Webster's Seventh New Collegiate Dictionary 326 (1970). "Force" can also mean "constraining power, compulsion; strength directed to an end." Black's Law Dictionary 644 (6th ed. 1990). The level of "force" necessary to overcome another's will to resist is directly proportional to the development of the other's will. Saknikent's interpretation of "force" ignores this fact, and would result in less punishment for those who isolate the very young and very vulnerable whose wills are either undeveloped or can be overcome with less than a full blown assault.[3] Such inconsistency cannot be intended.

According to Saknikent, he merely "kidnapped" his victim perhaps by "trickery," or by "inveigl[ing] [or] "decoy[ing]" her, but he did not "abduct" her by "force."[4] This is a distinction without a difference. We have considered "abduction" enhancements as "kidnapping" enhancements, *see United States v. Elkins*, 16 F.3d 952, 953 (8th Cir. 1994), and rightly so. The guideline for "Kidnapping, Abduction, Unlawful Restraint" provides that:

> If the victim was kidnapped, abducted, or unlawfully restrained during the commission of, or in connection with, another offense or escape therefrom; or if another offense was committed during the kidnapping, abduction, or unlawful restraint, increase to—
>
> (A) the offense level from the Chapter Two offense guideline applicable to that other offense if such offense guideline includes an adjustment for kidnapping, abduction, or unlawful restraint, or otherwise takes such conduct into account; or

> (B) 4 plus the offense level from the offense guideline applicable to that other offense, but in no event greater than level 43, in any other case....

USSG § 2A4.1(b)(7). Thus, the guidelines clearly call for a four-level increase whenever victims are kidnapped, either under the auspices of the relevant offense's "abduction" adjustment, or under USSG § 2A4.1(b)(7) when considering relevant conduct.[5] We find that giving "force" its ordinary meaning of overcoming the will of another, in the context of abduction adjustments, maintains the guidelines' internal consistency and rationality, and comports with our prior case law. *See United States v. McCabe*, 812 F.2d 1060, 1061–62, (8th Cir.) (involuntariness of seizure determined by the will of a responsible parent or guardian as to victim's well-being when "the victim is of such an age or mental condition as to be incapable of having a recognizable will" or of "understand[ing] the concept of kidnapping and its potential relevance to his or her situation"), *cert. denied,* 484 U.S. 832, 108 S.Ct. 108, 98 L.Ed.2d 67 (1987). Thus, we agree with the district court's determination that the abduction adjustment requires only that force necessary to overcome the particular victim's will.

■ The facts on which the district court based its determination that Saknikent abducted his victim are uncontested. In determining that the victim was forced to accompany Saknikent, the court considered the victim's mental incapacity which is such that she cannot communicate effectively or understand the meaning of conversation. The court also considered that she resided a mere half block from the store, that she rarely had been outside of town, and that she habitually visited the store, occasionally being escorted home by employees. These facts combine to support the inference that Saknikent's taking

---

**3.** For example, under Saknikent's approach, he who takes an unsuspecting two-year old off the street to a remote location to be raped would be punished less than he who takes an eleven-year old who knows enough to struggle.

**4.** The only support Saknikent puts forth for his narrow interpretation of "force" is the example given in application note one quoted above. However, as the guidelines state, examples are to be considered "merely illustrative." USSG § 1B1.1, comment. (n. 2).

**5.** The guidelines policy against isolating victims is so strong that such situations provide independent grounds for the district court to depart upwards from the recommended sentencing range. *See* USSG § 5K2.4.

the victim out of town was against her will.[6] The district court's conclusion that an abduction had occurred was therefore not error.

## III. CONCLUSION

For the reasons stated above, we affirm the district court.

---

**6.** Even if we were to use Saknikent's narrow definition of "force," the facts of the victim's infrequent travel, incomprehension of conversation, and habit of going only to and from the store render permissible an inference that Saknikent physically "forced" the victim to accompany him. Since Saknikent presented no evidence to rebut that inference, the district court was well within its factfinding discretion to accept the inference.