USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 99-1167

 UNITED STATES OF AMERICA,

 Appellee,

 v.

 REX W. CUNNINGHAM, JR.,

 Defendant, Appellant.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Frank H. Freedman, Senior U.S. District Judge]

 Before

 Torruella, Chief Judge,
 
 Bownes, Senior Circuit Judge,
 
 and Lynch, Circuit Judge.
 
 
 
 

 Barbara J. Sweeney, with whom Jack St. Clair was on brief for
appellant.

 Todd E. Newhouse, Assistant United States Attorney, with whom
Donald K. Stern, United States Attorney, was on brief for appellee.
 

January 6, 2000

 
 BOWNES, Senior Circuit Judge. Defendant-Appellant, Rex
W. Cunningham, Jr., pled guilty to an eight-count indictment. 
Count one of the indictment charged Cunningham with a racketeering
conspiracy in violation of 18 U.S.C. 962(d) (1994). The second
count charged a racketeering offense under 18 U.S.C. 962(c). 
Counts three and five charged Cunningham with making an
extortionate extension of credit in violation of 18 U.S.C. 892
(1994). Counts four and six charged him with collecting an
extortionate extension of credit with extortionate means in
violation of 18 U.S.C. 894 (1994). The seventh count charged
another violation of 18 U.S.C. 894, conspiring to use
extortionate means to collect a debt. The eighth count charged
Cunningham with operating an illegal gambling business in violation
of 18 U.S.C. 1955 (1994). 
 At sentencing, the district court awarded Cunningham a
two-level decrease for acceptance of responsibility, pursuant to
United States Sentencing Guidelines Manual ("U.S.S.G.") 3E1.1(a)
(1995 & Supp. 1997), but declined to give him an additional one-
level decrease for timely notification of his intent to plead
guilty. The district court also applied a four-level increase,
pursuant to U.S.S.G. 2E2.1(b)(3)(A), for abduction in the course
of making or financing an extortionate extension of credit or
collecting an extension of credit by extortionate means. 
 Cunningham appeals his sentence on the ground that the
district court erred in refusing to grant him an additional one-
level reduction, pursuant to U.S.S.G. 3E1.1(b). He also appeals
the district court's imposition of a four-level increase, pursuant
to U.S.S.G. 2E2.1(b)(3)(A). 
 I.
 The government's key evidence was obtained by electronic 
recordings of Cunningham's statements at his principal place of
business, Dillon's Tavern, in Springfield, Massachusetts, and by
interception and recording of his cellular phone conversations. 
The electronic surveillance was conducted pursuant to a warrant
issued by a state court.
 This is the second time this case has come before us. In
the prior case, defendant moved to suppress the recorded wire and
oral communications. The district court allowed the motion, and
subsequently denied the government's motion for reconsideration. 
The government filed a timely appeal, and we reversed the district
court's order of suppression. See United States v. Cunningham, 113
F.3d 289 (1st Cir. 1997). We denied defendant's petitions for a
rehearing and a rehearing en banc. Thereafter, the defendant filed
a petition for a writ of certiorari with the Supreme Court, which
was denied, see Cunningham v. United States, 118 S. Ct. 165 (1997)
(mem.), and mandate entered on December 12, 1997.
 The parties engaged in plea negotiations in December 1997
and January 1998, after the Supreme Court's denial of certiorari. 
Nonetheless, by the time the district court held a status
conference in late January 1998, the parties had not settled on a
plea agreement. They informed the court that the case would go to
trial and that there were still suppression issues outstanding. 
The court set a trial date of May 4, 1998.
 On March 16, 1998, the defendant informed the government
by letter that he intended to plead guilty to all counts of the
indictment, but it was his "intention to try the issues relating to
[the] forfeiture allegations." Cunningham officially entered his
guilty plea on April 20, 1998 and the court held a sentencing
hearing on July 31, 1998. The court did not pronounce sentence at
that time, but agreed to defer sentencing until after resolution of
the forfeiture issues and until Cunningham had an opportunity to
locate a witness to testify at the hearing. An agreement was
eventually reached with Cunningham's wife regarding forfeiture on
October 23, 1998. Cunningham never located the witness and the
court entered sentence on October 27, 1998. The court sentenced
Cunningham to 200 months in prison on each count, to be served
concurrently, and to three years of supervised release on each
count, to be served concurrently and with certain conditions.
 II.
 A. U.S.S.G. 3E1.1(b)
 U.S.S.G. 3E1.1 allows for downward adjustments in
offense level for acceptance of responsibility. The district
court found that Cunningham was eligible for the two-level decrease 
provided for in subsection (a). The district court refused,
however, to grant Cunningham an additional one-level deduction
under subsection (b). Subsection (b) provides:
 (b) If the defendant qualifies for a decrease
 under subsection (a), the offense level
 determined prior to the operation of
 subsection (a) is level 16 or greater, and the
 defendant has assisted authorities in the
 investigation or prosecution of his own
 misconduct by taking one or more of the
 following steps:
 (1) timely providing complete
 information to the government
 concerning his own involvement in
 the offense; or
 (2) timely notifying authorities of
 his intention to enter a plea of
 guilty, thereby permitting the
 government to avoid preparing for
 trial and permitting the court to
 allocate its resources
 efficiently, 
 decrease the offense level by 1
 additional level.

U.S.S.G. 3E1.1(b). In ruling on this issue, the district court
stated:
 Well, the fact that you were in plea
 negotiations with the government from December
 1997 on does not mean that [you were], in
 fact, going to plead guilty. The government
 then had to prepare, and it was six months
 after the Supreme Court response, and only six
 weeks before the trial date that you stated
 the intention to plead guilty was actually
 what you were going to do, and you went
 forward.

 And then, of course, there is the
 issue, and you say it is not important, but I
 think it probably is, the government does have
 to prepare for trial regarding the forfeiture
 issue, regardless of whether it is
 preponderance of the evidence and I said no as
 far as anything beyond that is concerned,
 still means they have to prepare for it. 

The court essentially restated the position of the Probation
Department, which, in the Pre-Sentence Report, advised against
making the additional one-level adjustment for three reasons:

 First, the fact that the defendant was in plea
 negotiations with the government in December
 of 1997 does not mean that Cunningham made it
 clear that his intention was to plead guilty. 
 Secondly, it was approximately six months
 after the Supreme Court's response and only
 six weeks before the said trial date that the
 defendant stated his intention to plead
 guilty. Thirdly, there is the issue of the
 government having to prepare for trial
 regarding the forfeiture issues. Although
 this is an unusual situation, the Probation
 Department does not believe that by pleading
 guilty to the criminal counts, that he met the
 criteria described in 3E1.1(b)(2). The
 government has still had to prepare for trial.

PSR 87.
 Cunningham makes two arguments that this ruling was in
error. First, he contends that forfeiture is a part of the
sentence, not the criminal offense, and, therefore, should not be
included within the scope of conduct to which the defendant must
admit before being eligible for the one-level adjustment. Second,
Cunningham argues that there was no evidence that the government
had to prepare for trial on the criminal charges themselves, or
that the timing of Cunningham's notification of his intent to plead
guilty led to an inefficient allocation of the court's resources.
 Cunningham faces an "uphill battle" in contesting the
district court's ruling. United States v. Morillo, 8 F.3d 864, 871
(1st Cir. 1993). The defendant bears the burden of proof on this
"fact-dominated issue" and the district court's ruling will only be
overturned if it is clearly erroneous. Id. Because "the
sentencing judge is in a unique position to evaluate a defendant's
acceptance of responsibility[,] . . . the determination of the
sentencing judge is entitled to great deference on review." 
U.S.S.G. 3E1.1, application note 5; see also United States v.
Correa, 114 F.3d 314, 317 (1st Cir.), cert. denied, 118 S.Ct. 326
(1997) ("The standard of review in sentencing appeals ordinarily is
deferential."). 
 The legal issue is whether Cunningham has complied with
the elements of 3E1.1(b)(2) and is, therefore, entitled to an
additional one-level decrease. This requires an examination of the
language of the guideline. "The language of subsection (b) is
absolute on its face. It simply does not confer any discretion on
the sentencing judge to deny the extra one-level reduction so long
as the subsection's stated requirements are satisfied." United
States v. Talladino, 38 F.3d 1255, 1264 (1st Cir. 1994). We have
stated:
 We will, of course, defer, in all such
 matters, to the district court's resolution of
 underlying facts and inferences, and pay
 careful attention to its reasoning. But if
 all Guideline criteria are met, and no basis
 to refuse the one-level decrease can be
 discerned, we cannot defer to the district
 court's refusal to grant the decrease.

United States v. Marroquin, 136 F.3d 220, 223 (1st Cir. 1998). 
 Where the district court's ruling is grounded in an
interpretation of a guideline's legal meaning or scope, our review
is de novo. See United States v. Voccola, 99 F.3d 37, 43 (1st Cir.
1996). Cunningham's first argument, concerning the district
court's reliance on his failure to agree to the forfeiture
allegations, merits de novo review; the question whether forfeiture
falls within the guideline's intended scope is a legal one. This
portion of the district court's ruling was in error. The Supreme
Court has clearly established that forfeitures made pursuant to the
federal drug and racketeering statutes are elements of the
sentence, rather than a part of the criminal offense itself. See
Libretti v. United States, 516 U.S. 29, 38-39 (1995) ("Forfeiture
is an element of the sentence imposed following conviction or, as
here, a plea of guilty . . . . Congress plainly intended forfeiture
of assets to operate as punishment for criminal conduct in
violation of the federal drug and racketeering laws, not as a
separate substantive offense.") (emphasis in original). 
 Further, the application notes accompanying the guideline
suggest that the level of acceptance of responsibility required to
be eligible for the adjustment is narrowly defined. See U.S.S.G.
 3E1.1, application note 1(a) ("Note that a defendant is not
required to volunteer, or affirmatively admit, relevant conduct
beyond the offense of conviction in order to obtain a reduction
under subsection (a)."). Subsection (b) refers to a "plea of
guilty" rather than a plea of guilty and an acceptance of the
sentence proposed by the government. The plain language of the
guideline allows little flexibility for the sentencing judge.
 Though the district court erred in relying in part or in
whole on Cunningham's refusal to accept the forfeiture allegations,
this court may uphold the denial of the one-level adjustment on
other applicable grounds. 
 A sentencing decision based in part on an
 invalid ground may be affirmed if "excision of
 the improper ground does not obscure or defeat
 the reasoning of the district court," and we
 are "left, on the record as a whole, with the
 definite and firm conviction that removal of
 the inappropriate ground would not be likely
 to alter the district court's view of the
 sentence rightfully to be imposed." 

United States v. Nunez-Rodriguez, 92 F.3d 14, 19 (1st Cir. 1996),
aff'd after remand, 141 F.3d 1150 (1st Cir. 1998) (per curiam)
(quoting United States v. Diaz-Bastardo, 929 F.2d 798, 800 (1st
Cir. 1991)). 
 The district court gave three reasons for denying 
Cunningham the additional one-level adjustment pursuant to
 3E1.1(b). First, the district court inferred that Cunningham's
notification of his intent to plead guilty was untimely. Second,
the district court reasoned that the additional one-level
adjustment was unwarranted because the government had to prepare
for trial. Third, the district court reasoned that the forfeiture
issue would require a trial, for which the government would have to
prepare. We note that the forfeiture issue was the last of the
three reasons given by the district court in its refusal to award
the additional one-level adjustment. It should be noted that the
district court stated that forfeiture was only "probably"
important. It would seem that the district court did not rely
solely on the forfeiture issue when it refused to award Cunningham
the additional one-level adjustment.
 The question, therefore, is whether the district court's
decision not to award the additional one-level adjustment can be
upheld on other grounds. Another stated ground for the district
court's ruling was the timeliness of Cunningham's notification of
his intent to plead guilty. The district court noted that the
earlier plea negotiations were not sufficient to constitute
notification of Cunningham's intent to plead guilty, and that
eventual notification was given approximately six months after the
Supreme Court's denial of certiorari and only six weeks before the
trial date. 
 Recently, this court stated that "the notice of an intent
to plead guilty must ordinarily be given well before trial." 
United States v. Hines, No. 98-1821, slip op. at 5 (1st Cir. Nov.
8, 1999). On the other hand, we have upheld adjustments for
notification provided later in the process than Cunningham's. We
upheld a one-level adjustment where notification of the defendant's
intent to plead guilty was made more than one year after the
indictment and only two weeks before trial. See United States v.
Dethlefs, 123 F.3d 39, 43 (1st Cir. 1997) (upholding the one-level
adjustment for timely notification, but vacating the sentences
because of unwarranted downward departures). Section 3E1.1
"defines timeliness in functional, rather than strictly temporal,
terms." Id. For that reason, "[t]imeliness is a concept, not a
constant, and it normally must be evaluated in context." Id. 
 In terms of legal interpretation of the guideline, the
district court committed no error. The district court correctly
refused to count the time between Cunningham's indictment and the
denial of certiorari against him. This is in accordance with cases
protecting a defendant's constitutional rights to file non-
frivolous pre-trial motions without forfeiting his eligibility for
this adjustment. See Marroquin, 136 F.3d at 224-25; see also
United States v. Kimple, 27 F.3d 1409, 1413 (9th Cir. 1994). The
record also reflects that the district court properly determined
that, for purposes of the guideline, Cunningham's letter in March
1998 stating his intent to plead guilty, was his official
notification. See United States v. Munoz, 83 F.3d 7, 9 (1st Cir.
1996) (per curiam) (stating that the date of notification, rather
than the date of the plea itself, is the proper benchmark). The
district court considered more than just the time that elapsed
before the notification in making its determination; it referred in
its ruling on the matter to the government's need to prepare for
trial.
 Thus, the district court's ruling on this matter can only
be overturned if it was a clearly erroneous application of the
standard to the facts of the case. Cunningham argues that it was,
because there was no evidence in the record suggesting that the
government had begun preparations for trial or suggesting that the
court was led to allocate its resources inefficiently. It is,
however, questionable whether the district court's determination
was clearly erroneous. As previously stated, the district court
is due substantial deference in its fact-based sentencing
determinations. This includes "wide latitude to decide what type
of proof is, or is not, sufficiently trustworthy to enter into the
sentencing calculus." United States v. Robinson, 144 F.3d 104, 108
(1st Cir. 1998). Moreover, the district court's sentencing inquiry 
is not confined to evidence that would be admissible under the
Federal Rules of Evidence. See U.S.S.G. 6A1.3(a). Instead, the
court may consider any evidence that "has sufficient indicia of
reliability to support its probable accuracy" and may draw
reasonable inferences therefrom. Id. 
 Given the ambiguities in the record and the district
court's rulings, we are not in a position to determine whether the
district court's denial of the additional one-level adjustment was
clearly erroneous. In such a case, it is proper for us to "remand
for resentencing for clarification, and further factfinding as
appropriate." Nunez-Rodriguez, 92 F.3d at 23-24 (footnote
omitted). Therefore, Cunningham's sentence, as it pertains to the
additional one-level adjustment pursuant to 3E1.1(b)(2), is
vacated and the case is remanded for resentencing.
 At the resentencing hearing, the court should determine
how much time the government had spent on preparing for trial prior
to the guilty plea notification. This information should be
readily available in any case where the government opposes
application of the reduction. The government has to do more than
make a generalized guess to how much time it had already used in
preparing for trial. The basic questions are: whether the
government actually began preparing for trial before Cunningham
notified them of his intention to plead guilty and the extent of
this pre-trial preparation; and whether the court's resources were
inefficiently allocated because of the length of time that had
elapsed before the defendant notified the government of his
intention to plead guilty.
 B. U.S.S.G. 2E2.1(b)(3)(A) 
 The second argument Cunningham raises on appeal concerns
the appropriateness of the four-level upward adjustment applied by
the district court under U.S.S.G. 2E2.1(b)(3)(A), which provides:
 If any person was abducted to facilitate the
 commission of the offense [referring to the
 offense of "making or financing an
 extortionate extension of credit" or
 "collecting an extension of credit by
 extortionate means"] or to facilitate escape,
 increase by 4 levels . . . .

U.S.S.G. 2E2.1(b)(3)(A). "Abducted" is defined in the
application notes to 1B1.1 as follows:
 (a) "Abducted" means that a victim was forced
 to accompany an offender to a different
 location. For example, a bank robber's
 forcing a bank teller from the bank into a
 getaway car would constitute an abduction.

U.S.S.G. 1B1.1, application note 1(a).
 The government's key evidence was obtained pursuant to
the electronic surveillance of Cunningham at his principal place of
business, Dillon's Tavern, as well as from his cellular phone. 
While the electronic surveillance captured extensive evidence
relating to Cunningham's dealings, the only evidence relevant to
this appeal concerns his statements regarding his interactions with
a man named Ronald Goulet. Goulet had borrowed several thousand
dollars from Cunningham at a very high interest rate. When Goulet
failed to make payments on this loan for a period of two years,
Cunningham and three others severely beat him. 
 The district court found that the electronic surveillance
evidence regarding Cunningham's beating of Ronald Goulet provided
sufficient evidence that Cunningham abducted Goulet and that this
four-level increase was warranted. This evidence contains
statements by Cunningham that he "followed [Goulet] and got out of
the car," "threw him in the fucking car" and "[t]ook him behind the
Gaslight." An electronic recording of Cunningham speaking to an
acquaintance recorded him as saying:
 
 Oh yeah, well I got him, his sister
 died. So I got, we sat outside the wake. I
 went myself because I prefer that. We sat
 outside the wake. I followed him, a perfect
 tail. Followed him and got out of the car. I
 threw him in the fucking car. Took him behind
 the Gaslight. Had three guys waiting there. 
 Beat him with fucking pipes, tire irons. I
 dropped his car keys on his chest. I told him
 four of us beat you up. And I said I'll call
 an ambulance for you. Left him. . . .

PSR 21.
 To complicate matters, the tapes also contain statements
by Cunningham that suggest that he used a different tactic to get
Goulet to the Gaslight Lounge. On the tapes, Cunningham infers
that he tricked Goulet into following him to the Gaslight. That
portion of the electronic recording reveals Cunningham stating:
 No, no. When, when, well when he got out of
 the car I said to him the bad news is I said
 there's no meeting. And I said nobody's here
 but me and I smashed him in the face and he
 went down and them guys come out from behind a
 dumpster. And I backed off and I said one guy
 at a time and don't hit him in the head. But
 he went down all over the fucking place.

PSR 22. Cunningham argued to the district court that his second
statement presented the correct version of events, and that the
first version was simply braggadocio. He stated in an affidavit
that he did not use any physical force to bring Goulet from his
sister's wake to the Gaslight, but instead tricked him into going
to the Gaslight Lounge by telling him that Cunningham's uncle, with
whom Goulet had a long-term friendship, wished to meet with him. 
 In addressing Cunningham's objections, the district court
held that "regardless of whether he was bodily thrown into the car,
or was put into the car by the way of ruse, which is what your
client states it was, [it] is in my opinion abduction." At another
point, the court said:
 But at this point I want to make it
 clear if someone says to me, "Get in there or
 I'll beat the hell out of you, get in that
 car", and forces me in the car, that is, of
 course, force.

 If, however, he says, "Why don't you
 get in that car and maybe we'll do something
 here and make it up to you", and encourages
 you by way of ruse that, again, seems to me to
 be abduction. That is how I feel at this
 time, but it is subject to change.

In its final ruling on this matter, the court said:
 I still find that any will that Mr. Goulet
 might have had to prevent any meeting that day
 of the wake with Mr. Cunningham has been
 completely destroyed, and he had no will to
 overcome the fact that Mr. Cunningham urged
 him to get into the car and then, in fact,
 threw him in the car. So I find that an
 abduction has been maintained and found on the
 factual situation expressed here in this
 court.

 On appeal, Cunningham makes two arguments that this
ruling was in error. First, he argues that abduction under the
guidelines must be committed by means of physical force. Second,
he argues that there was no reliable evidence that physical force
was used to transport Goulet from his sister's wake to the back of
the Gaslight Lounge where he was beaten.
 In support of his first argument, Cunningham refers to
the use of the word "force" in the definition of "abducted"
provided in the guidelines. The guideline's use of this term is
not sufficient to uphold Cunningham's interpretation of the
guideline. First, the word "force" in no way suggests that the
force exerted must be of a physical or violent nature. There is
nothing in the plain meaning of the guideline to suggest that the
force used must be physical. "Force" is defined as compelling "by
physical, moral, or intellectual means" or "to impose" or "to win
one's way." Webster's Seventh New Collegiate Dictionary 326
(1970). Second, as a policy matter, it seems that such a limited
interpretation of the guideline would be unwise. An abduction
accomplished by use of threat and fear carries the same dangerous
consequences as an abduction accomplished by use of physical force
 the offender is able to isolate the victim, which "increases the
likelihood that the victim will be harmed." United States v.
Saknikent, 30 F.3d 1012, 1013-14 (8th Cir. 1994) (quoting Webster's
Seventh New Collegiate Dictionary 326). Third, at least two
circuits have refused such a limitation on the definition of
abduction under the guidelines. See id. In Saknikent, the court
found that "the abduction adjustment requires only that force
necessary to overcome the particular victim's will." Id. at 1014. 
In that case, the Eighth Circuit concluded that trickery used by
the defendant to convince a mentally retarded child to accompany
him was sufficiently forceful to qualify as abduction under the
guidelines. See id.; see also United States v. Romero, 189 F.3d
576, 590 (7th Cir. 1999) (holding that under U.S.S.G. 2A3.1(b)(5)
"abduction . . . means kidnapping whether kidnapping was
committed by force of by the use of a force substitute such as
inveigling."). While it is clear that both Saknikent and Romero
involve the abduction of children by trickery or inveigling, we
think that the age of the victim need not be dispositive. 
 We rule that there was sufficient evidence to support the
district court's conclusion that Cunningham abducted Goulet either
by physical force or trickery. Cunningham argues that his
statements on the tape regarding physical force are unreliable and
inconsistent and, thus, should not have been given weight by the
district court. In the face of the beating administered to Goulet
by defendant and his henchmen, about which there is no dispute, the
argument rings very hollow.
 The district court is given substantial leeway in
assessing and weighing the facts. See United States v. Jimenez
Martinez, 83 F.3d 488, 493 (1st Cir. 1996) ("The court has wide
discretion in determining whether sentencing information is
reliable."). In addition, in absence of clear error, credibility
assessments "are exclusively within the province of the sentencing
court." United States v. Olivier-Diaz, 13 F.3d 1, 4 (1st Cir.
1993). This means that "'where there is more than one plausible
view of the circumstances, the sentencing court's choice among
supportable alternatives' is not clearly erroneous and a reviewing
tribunal cannot disturb it." Correa, 114 F.3d at 317 (quoting
United States v. Ruiz, 905 F.2d 499, 508 (1st Cir. 1990)). Under
this standard, the court's conclusion that some physical force was
used in bringing Goulet to the Gaslight Lounge can easily be
upheld. In fact, the district court indicated that it weighed both
versions of the story and "[t]he government's comments [that
physical force was used to abduct Goulet]. . . make[] more sense to
this Court." 
 After careful review of the record, and giving due
deference to the district court's findings of fact, this court
determines that Cunningham did "abduct" Goulet and it was warranted
in applying a four-level increase pursuant to U.S.S.G.
 2E2.1(b)(3)(A). Therefore, this part of the district court's
sentence is affirmed.
 Vacated and remanded in part and affirmed in part.