# United States Court of Appeals
## For the First Circuit

No. 02-1706

UNITED STATES OF AMERICA,

Appellant,

v.

ALFRED CRAVEN,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Joseph L. Tauro, U.S. District Judge]

Before

Selya, Circuit Judge,

Coffin, Senior Circuit Judge,

and Howard, Circuit Judge.

Dina M. Chaitowitz, Assistant United States Attorney, with whom Michael J. Sullivan, United States Attorney and Michael D. Ricciuti, Assistant United States Attorney were on brief, for appellant.
Stephen Hrones, with whom Hrones & Garrity was on brief, for appellee.

February 6, 2004

**HOWARD**, **Circuit Judge**.  The government challenges a downward departure in the sentencing of Alfred Craven, a leader of an elaborate marijuana trafficking venture that operated for several years in California and Massachusetts.  The district court found that Craven, a former drug user, had demonstrated such "extraordinary rehabilitation" in changing his lifestyle prior to his arrest that he was entitled to a 37-month downward departure in his sentence.  The government contests this finding, citing a record of eighteen disciplinary violations by the defendant during his presentencing detention.  We reverse.

## I.    Factual and Procedural Background

This is not the first occasion on which we have considered the sentence of Alfred Craven.  See United States v. Craven, 239 F.3d 91 (1st Cir. 2001).  We recite the pertinent background in brief, leaving some of the details to our earlier opinion.  See id.  In June 1999, Craven pleaded guilty to nine crimes committed in connection with his role in a longstanding marijuana distribution scheme.  After a series of hearings, the district court (Gertner, J.) granted a 37-month downward departure for extraordinary rehabilitation, sentencing Craven to 151 months in prison.[1]  In reaching its decision, the district court relied on

_____

[1]Craven otherwise would have been subject to a sentence of 188 to 235 months, a sentencing-range calculation that already included (1) a 3-level acceptance-of-responsibility reduction, and (2) an adjustment of his criminal history category from III to I on the ground that the presentence report's category-III classification

an ex parte conversation with an expert witness appointed by the court to evaluate Craven's claims of rehabilitation from drug addiction. The government appealed, alleging that (1) the district court abused its discretion in relying on its conversation with the expert in its sentencing determination, and (2) the record otherwise failed to support a finding of extraordinary rehabilitation. Agreeing with the first of the government's two contentions, we vacated and remanded for re-sentencing before another judge. See generally id.

On remand, the district court (Tauro, J.) heard the in-court testimony and cross-examination of the expert witness whose ex parte conversation with the first sentencing judge had been the subject of the government's first appeal.[2] Dr. Laurence Weisman, a clinical psychologist, testified that he had met with the defendant on one occasion in January 2000 and had reviewed his presentence report. According to his interview with the defendant,

---

overstated Craven's culpability.

[2]In a hearing prior to the testimony of the expert witness, Judge Tauro stated that he had reached the same preliminary conclusions regarding sentencing that Judge Gertner had reached before her ex parte conversation with the witness, stating "I am just where Judge Gertner was when she responded that she didn't have enough to do anything with respect to the changed circumstances and his redemption. And I agree with her with respect to all the other issues of the gun [enhancement], all that. It is exactly the same as where she was." Judge Tauro said that he would hear from the expert in court, and that if he was "impressed with his testimony," then he would "probably give [Craven] the same sentence as [Judge Gertner] did."

Craven had struggled with drug addiction throughout his life but had stopped using drugs and alcohol about a year before his arrest, at a time when he was aware that he was the subject of a criminal investigation. Craven had also become more involved in caring for his young son and had begun working a full-time job. Dr. Weisman testified that Craven had demonstrated "significant insight and responsibility for his behaviors," and had recognized a need to turn his life around by addressing his drug addiction. According to Dr. Weisman, Craven was "intent [o]n taking responsibility for himself and changing . . . his lifestyle.

Dr. Weisman had reviewed Craven's presentencing disciplinary records prior to testifying, although he had not seen them during his original evaluation of Craven in 2000. He testified that Craven's disciplinary problems had not changed his earlier opinion about the prognosis for Craven. In his 2000 expert report, Dr. Weisman had concluded:

> As with any individual attempting to overcome a background of addiction and criminal lifestyle, the prognosis remains guardedly optimistic if the individual participates in a comprehensive, longterm recovery program. Mr. Craven appears to have demonstrated both the willingness and capability which would make him a good candidate to succeed.

(emphasis in original). Dr. Weisman's opinion remained unchanged largely because Craven's misconduct during presentencing detention was not "beyond the norm" of what he would expect from someone who is incarcerated. As Dr. Weisman recalled the disciplinary records,

-4-

Craven had had a dispute with a guard and had been found with homemade alcohol. But he had not been violent or cruel towards anyone.

On cross-examination, Dr. Weisman was asked about particular incidents in which Craven had been disciplined. The disciplinary records documented eighteen episodes of misconduct, including incidents in which Craven had punched one inmate in the face with a closed fist, headbutted another, and repeatedly elbowed a third in the face while holding him down. Craven was also disciplined for numerous incidents of insubordination.[3] Also, as Dr. Weisman had acknowledged on direct, Craven was once found in possession of homemade alcohol.

In response to this questioning, Dr. Weisman conceded that some of the incidents were violent. But he concluded that Craven was in an environment where there was a lot of fighting and that Craven's behavior was better than other inmates' because he would at least "cuff up," or allow himself to be handcuffed, when ultimately ordered to do so by an officer. Dr. Weisman found Craven's willingness to respond to an order to be significant for

_____

[3]According to one report, Craven was once found kicking his cell door. When the door was opened to allow a cellmate to leave for kitchen duty, Craven ran out of the cell, yelling that the officer who had opened the door was "going to get hurt" and was "a fucking asshole." On another occasion, when an officer told Craven to stop kicking his cell door and making disruptive animal noises, Craven told the officer to take his disciplinary report and "wipe [his] ass with it, that's all it's good for."

-5-

someone who was raised without discipline or structure. Dr. Weisman testified that his conclusion regarding Craven's prognosis remained the same despite these incidents, stating that "within the extremes of a perfect record and an out-of-control, unmanageable end at the other, clearly he falls within limits that in my mind still bode for the same outcome and the same intervention."

The district court sentenced Craven to 151 months, which constituted a 37-month downward departure from the 188- to 235-month range to which he otherwise would have been subject. The sentence was identical to the sentence imposed by the first sentencing judge. The district court found that Craven had demonstrated extraordinary rehabilitation by refraining from drug use and drug sales for a period of nearly two years prior to his arrest. The court noted that the defendant's disciplinary record after his first sentencing was good, and described the defendant's prior disciplinary violations as "a period of aberrant behavior that the doctor himself explained. It's as though it was some sort of pressure cooker that he was going into and the doctor understands that." In its statement of reasons, the district court concluded:

> Defendant's post offense rehabilitation is so extraordinary as to warrant the downward departure. The court has found that the defendant's fundamental change in attitude and radical alteration in lifestyle entitle the defendant to the downward departure.

## II.  Analysis

As in <u>Craven I</u>, we begin by acknowledging that "[o]rdinarily, presentence rehabilitation is not a permissible ground for departure because it can be factored adequately into the sentencing equation by an acceptance-of-responsibility credit." <u>Craven</u>, 239 F.2d at 99 (citing U.S. Sentencing Guidelines Manual § 3E1.1, cmt. n.1(g)).  Even so, in extraordinary circumstances, such a departure may be appropriate.  <u>See</u> <u>id.</u>  In determining whether these circumstances are present, we engage in a three-pronged analysis:

> we evaluate whether the circumstances cited by the district court are sufficiently unusual to justify the departure.  If so, we next inquire into whether those circumstances are adequately documented in the record.  If the departure clears these two hurdles, we then measure its reasonableness.

<u>Id.</u>  The defendant bears the burden of proving that he is eligible for a downward departure.  <u>United States</u> v. <u>Sachdev</u>, 279 F.3d 25, 28 (1st Cir. 2002).  The parties dispute whether we should give some deference to the district court's findings in the wake of the PROTECT Act, Pub. L. No. 108-21, 117 Stat. 650 (2003); <u>see</u> <u>United States</u> v. <u>Frazier</u>, 340 F.3d 5, 14 (1st Cir. 2003), but we need not resolve this issue because we find that the downward departure is not sustainable even under the more deferential tripartite standard.  <u>See</u> <u>United States</u> v. <u>Sanchez</u>, --- F.3d ---, Nos. 02-2504, 02-2566, 2004 WL 32864, at *7 (1st Cir. Jan. 7,

2004)(reviewing a departure claim without determining which standard of review applies by using the more defendant-friendly of the standards).

Looking to the first of the three applicable questions, the only identified bases for concluding that extraordinary rehabilitation had occurred were the district court's findings that there had been a presentencing period of almost two years without drug selling or drug use,[4] that there had been a "radical alteration" in Craven's lifestyle, and that Craven's prison record had been clean in the two years after sentencing. The question before us is whether the district court acted within its discretion in concluding that this rehabilitation is so extraordinary that it merits a downward departure.[5] As we noted in Craven I, "[t]he touchstone of extraordinary rehabilitation is a fundamental change in attitude." Craven, 239 F.3d at 100. There, we expressed considerable skepticism as to whether a downward departure would be appropriate in light of Craven's presentencing disciplinary record.

_____

[4]The defendant in fact had stated that he had ceased drug use approximately thirteen months prior to his arrest.

[5]In two prior cases, we have rejected downward departures on the basis of rehabilitation from drug addiction. See United States v. Rushby, 936 F.2d 41, 43 (1st Cir. 1991); United States v. Sklar, 920 F.2d 107, 117 (1st Cir. 1990). Craven attempts to distinguish these cases because the defendants' rehabilitative efforts in Rushby and Sklar began after their respective arrests. In Craven I we found this distinction to be insignificant, noting the district court's finding that Craven was aware that he was the subject of a criminal investigation before he began his rehabilitation efforts.

See id. We left open the possibility, however, that some portion of the ex parte communication between the court and the expert witness (later recounted as in-court testimony on remand) might have rendered Craven's situation unique. See id. at 100-01.

We are no more persuaded by the defendant's evidence of rehabilitation on remand than we were in Craven I. Surely extraordinary rehabilitation means something more than merely behaving lawfully after years of criminal activity. Even if the defendant's conduct in the period preceding his arrest could meet the high threshold for a downward departure, his disruptive and sometimes violent behavior while detained before sentencing undermines his claim of extraordinary rehabilitation. Dr. Weisman's testimony that Craven's conduct was "within the extremes" of what he would expect from someone who was adjusting to incarceration hardly distinguishes the defendant from the heartland of other offenders who claim rehabilitation. Under these circumstances, the district court's finding that Craven's rehabilitation was different from the ordinary case was not plausible. Cf. United States v. Cunningham, 201 F.3d 20, 28 (1st Cir. 2000). Because we so find, we do not address whether the circumstances cited by the district court were adequately documented, or whether the departure was reasonable.

### III. Conclusion

For the foregoing reasons, we reverse the downward

departure and remand for resentencing within the applicable guidelines sentencing range of 188 to 235 months.

So ordered.