PRECEDENTIAL
UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4422
_____

UNITED STATES OF AMERICA

v.

THOMAS EDWARD SMITH,
                                    Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 4-12-cr-00228-001)
District Judge:  Hon. Christopher C. Conner
_____

Submitted Under Third Circuit LAR 34.1(a)
July 10, 2014

Before:   RENDELL, CHAGARES, and JORDAN, *Circuit
Judges*.

(Filed:  July 22, 2014)
_____

Ronald A. Krauss
Office of Federal Public Defender
100 Chestnut Street - #306
Harrisburg, PA   17101
  *Counsel for Appellant*

George J. Rocktashel
Office of United States Attorney
240 West Third Street - #316
Williamsport, PA   17701
  *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

This is an appeal from a judgment of the United States District Court for the Middle District of Pennsylvania sentencing Thomas Smith to 171 months' imprisonment for carjacking, brandishing a firearm during a crime of violence, and possessing a stolen firearm.  For the reasons that follow, we will affirm.

## I. Background

Around noon on August 8, 2012, Smith pulled his car off to the side of a road in Emporium, Pennsylvania, pretending that it was disabled.  He flagged down the manager of the local Citizens & Northern Bank, Kimberlea Whiting, who was driving home from the bank for lunch in

her Ford Explorer. Smith asked her for a ride to an automobile repair shop, and she obliged. As it turned out, Smith had been waiting for Whiting. He wanted revenge because Citizens & Northern Bank had initiated foreclosure proceedings on the house he shared with his girlfriend. After a conversation concerning the foreclosure, Smith drew a gun, which police later determined he stole from his brother-in-law, and directed Whiting to drive to the bank, saying that she and another bank employee were now "going to pay for" taking his house. (PSR ¶ 7.) At first, Whiting thought Smith was joking – she even reached for his gun – but he insisted he was serious.

Once at the bank, Smith directed Whiting to drive to the rear parking lot; however, Whiting continued past the lot because she feared he would shoot and kill her there. Smith instructed her to turn around, but, playing for time, Whiting stopped for other vehicles and waited for an opportunity to escape. "As she approached a convenience store, [she] slowed down, unfastened her seat belt, and rolled [out of the car] onto the street" without serious injury. (PSR ¶ 8.) Smith abandoned the car after it came safely to a stop close to the convenience store. While fleeing on foot, he also hid the gun beside a nearby creek. He remained a fugitive until his arrest a month later.

Following certain proceedings not relevant here, a federal grand jury returned a three-count second superseding indictment against Smith, charging him with carjacking, in violation of 18 U.S.C. § 2119; brandishing a firearm during a crime of violence, in violation of 18 U.S.C.

3

§ 924(c)(1)(A)(ii);[1] and possessing a stolen firearm, in violation of 18 U.S.C. § 922(j). Smith pleaded not guilty and went to trial. The jury convicted him on all counts.

The U.S. Probation Office issued a Presentence Investigation Report ("PSR") that set forth Smith's recommended Sentencing Guidelines range. His base offense level was 20, calculated from the U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 2B3.1, for carjacking, which was his most serious offense for purposes of grouping his crimes and establishing a sentencing range, *see* U.S.S.G. § 3D1.3(a) (advising that, for groups of closely related crimes, "the highest offense level of the counts in the Group" applies). The PSR also included in the calculation four enhancements, producing a total offense level of 29. First, the PSR added two points for bodily injury sustained by a victim, under U.S.S.G. § 2B3.1(b)(3)(A). Second, it added four points for the victim's abduction, under § 2B3.1(b)(4)(A). Third, it added two points for carjacking, under § 2B3.1(b)(5). And fourth, it added one point for the victim's loss, *i.e.*, the value of Whiting's Ford Explorer ($26,750), under § 2B3.1(b)(7)(B). Combined with Smith's criminal history category of I, the total offense level recommended by the PSR provided a sentencing range of 171-192 months' imprisonment, including a mandatory, consecutive sentence

---

[1] What appears to be a typographical error in the second superseding indictment mistakenly attributes the brandishing violation to 18 U.S.C. § 924(c)(1)(A)(iii), which penalizes the discharge of a firearm. The error is of no moment, however, because the text of the indictment clearly sets forth, and the parties clearly understood, brandishing to be the charged conduct.

4

of 84 months' imprisonment for brandishing a weapon during a crime of violence.

Before and during the sentencing hearing on November 1, 2013, Smith objected to the offense-level enhancements based on bodily injury, abduction, and loss. The District Court sustained the objection to the bodily-injury enhancement but rejected the remaining two objections. In overruling the objection to the abduction enhancement, the Court relied on our opinion in *United States v. Reynos*, 680 F.3d 283, 286-87 (3d Cir. 2012). After reviewing the record, the Court concluded that Smith's actions rose to the level of abduction because (1) he pointed a gun at Whiting, thus showing that she was "not free to refuse [his] commands"; (2) he "forced … Whiting to move from her original location by directing the car's whereabouts in Emporium"; and (3) although Whiting disobeyed him by not entering the bank parking lot, that daring disobedience did not indicate that she felt fully free to refuse his commands, and, in fact, she escaped while still complying with his command to "keep moving." (App. at 651-52.)

Then, in overruling the loss objection, the Court found persuasive our non-precedential decision in *United States v. Grey*, in which we held that a vehicle was "taken" for purposes of loss under § 2B3.1 when an offender exercises temporary dominion and control over it and its contents. 369 F. App'x 331, 334 (3d Cir. 2010). The Court determined that, although Smith abandoned the undamaged vehicle shortly after Whiting escaped, his armed commandeering of the car qualified for the enhancement.

5

After resolving Smith's objections, the District Court calculated a total offense level of 27, which, combined with a criminal history category of I, resulted in a recommended sentencing range of 154-171 months' imprisonment on the carjacking and stolen weapon counts, including the above-mentioned mandatory, consecutive sentence of 84 months' imprisonment on the brandishing count. After reviewing the sentencing factors set forth in 18 U.S.C. § 3553(a), the Court noted that "the seriousness of this offense and the fact that it is not a mine-run carjacking but was intended to result in some sort of twisted retribution for foreclosure proceedings calls for a sentence at the high end of the guidelines range." (App. at 673.) It then imposed a sentence at the top of the recommended range: 171 months' imprisonment (87 months each on carjacking and possession of a stolen weapon to be served concurrently, along with the mandatory 84 months for brandishing), $300 in special assessments, and a three-year term of supervised release. Smith timely appealed the judgment of conviction and sentence.

## II.    Discussion[2]

Smith argues that his sentence is procedurally unreasonable because the District Court miscalculated his total offense level under the Sentencing Guidelines.  More specifically, he claims the Court committed two procedural errors: first, it wrongly concluded his crimes qualify for the enhancement for abduction, and, second, because Whiting's car was not "taken, damaged, or destroyed," as those terms are used in § 2B3.1 of the Guidelines, the Court wrongly applied the loss enhancement.  We address each of those arguments in turn.

### A.    *Application of the Abduction Enhancement*

Section 2B3.1(b)(4)(A) of the U.S. Sentencing Guidelines Manual provides that, "[i]f any person was abducted to facilitate commission of the offense or to facilitate escape," the defendant's offense level is to be increased by four points. U.S.S.G. § 2B3.1(b)(4)(A) (2012). "'Abducted' means that a victim was forced to accompany an offender to a different location.  For example, a bank robber's

_____

[2] The District Court had subject matter jurisdiction under 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291.  "When reviewing the sentencing decisions of the district courts, we exercise plenary review over legal questions about the meaning of the [S]entencing [G]uidelines, but apply the deferential clearly erroneous standard to factual determinations underlying their application." *United States v. Reynos*, 680 F.3d 283, 286 (3d Cir. 2012) (quoting *United States v. Collado*, 975 F.2d 985, 990 (3d Cir. 1992)) (internal quotation marks omitted).

forcing a bank teller from the bank into a getaway car would constitute an abduction." *Id.* § 1B1.1 cmt. n.1(A). In *Reynos*, we described three predicates for applying the enhancement:

> First, the robbery victims must be forced to move from their original position; such force being sufficient to permit a reasonable person an inference that he or she is not at liberty to refuse. Second, the victims must accompany the offender to that new location. Third, the relocation of the robbery victims must have been to further either the commission of the crime or the offender's escape.

680 F.3d at 286-87.

The pertinent facts of *Reynos* were these: while robbing a pizza shop, the defendant kicked in a locked bathroom door, brandished a weapon, and forced an employee to accompany him to a cash register 34 feet away. *Id.* at 285, 290. We concluded that the defendant's purpose in forcing the employee's movement was to facilitate the commission of a robbery by compelling that employee to provide the defendant with access to the cash register. *Id.* at 289. We further held that the distance of over thirty feet was enough for the action to qualify as abduction under the Guidelines. *Id.* at 291.

Although the carjacking here presents different circumstances than those at issue in *Reynos* – in particular, Whiting disregarded some of Smith's commands and ultimately escaped – we agree with the District Court that Smith's actions satisfy the *Reynos* predicates for finding that

an abduction occurred. First, Smith used force to control both Whiting and her vehicle. He pointed a gun at her and directed her to drive to the bank after tricking her into providing him entry into her vehicle. In *Reynos,* we had "no hesitation in concluding that the brandishing of a weapon is a use of force for purposes of the abduction enhancement." *Id.* at 288. Smith's use of a gun would certainly have caused any reasonable person to believe that he or she was not at liberty to refuse orders.

Second, Smith forced Whiting to accompany him to a new location. While holding her at gunpoint, he ordered her to the bank parking lot. Smith's argument that Whiting disobeyed his orders by stopping at stop signs and do-not-enter signs, as well as by yielding to other cars, is of no moment. Whiting drove back to the bank instead of to her intended destination, her home, because Smith ordered her to do so at gunpoint.

And third, Smith forced Whiting to return to the bank to facilitate his threatened revenge for the foreclosure on his home. Whether he intended to physically harm her or rob her or make her "pay" in some other way is unclear from the record; what is clear is that he intended to commit a crime that would have been impossible without her presence. In fact, Whiting's stated motivation for escape gives a contemporaneous view of events and buttresses the District Court's application of the abduction enhancement: she said she fled because "I was not about to pull into the back of a building where there was nobody around and allow him to shoot me there." (App. at 283.)

9

An important fact that distinguishes this case from *Reynos* is that Smith ultimately failed in his criminal plan – the carjacking was only a means to an intended but unrealized crime of revenge against Whiting and her co-worker. Another difference is that Whiting disregarded some of Smith's orders, which may suggest that she felt, to some degree, "at liberty to refuse." Smith naturally tries to use to his advantage those distinctions from the facts in *Reynos*. He invites us to fashion an exception to the abduction enhancement for when a victim struggles with the offender to the point that he or she thwarts the intended criminal objective. We decline that invitation, as it is based on the perverse logic that a victim's boldness lessens a criminal's culpability. *Reynos* provides for an objective, not subjective, standard in determining whether use of force was sufficient to satisfy the first predicate. Thus, whether or not a victim struggles or disobeys orders, as long as a reasonable person would not have felt free to refuse the offender's commands, the predicate is satisfied. And, to the extent that it was not plain from our decision in *Reynos*, we now explicitly hold that the intended crime need not be accomplished for the abduction enhancement to apply. The trial record fully supports the District Court's finding that Smith abducted Whiting. We therefore conclude that Smith's sentence was not the result of any procedural error in applying the abduction enhancement.

B.     *Application of the Loss Enhancement*

Application Note 3 in the Commentary to Section 2B3.1 defines "loss" for purposes of robbery[3] as "the value of the property taken, damaged, or destroyed."     U.S.S.G. § 2B3.1 cmt. n.3.     A one-point sentencing enhancement applies if the value of the loss is more than $10,000 but less than $50,000.  *Id.* § 2B3.1(b)(7)(B).  The parties agree that the value of Whiting's Ford Explorer was $26,750.     The District Court found that, although Smith did not damage or destroy the vehicle, he "took" it when he commandeered it in furtherance of his ultimate goal of retribution.     Although Smith was only a temporary passenger in the vehicle, as mentioned above, the Court looked to our non-precedential opinion in *Grey*, in which we stated that a robber "takes" an object for purposes of § 2B3.1 when he exercises "dominion and control" over it, even when he does so only temporarily.[4] 369 F. App'x at 333-34.  The Court accordingly applied the enhancement over Smith's objection.

_____

[3] Chapter 103 of Title 18 of the United States Code, titled "Robbery and Burglary," delineates carjacking as a form of robbery, such that the robbery guidelines are applicable here.  18 U.S.C. § 2119; U.S.S.G. § 2B3.1(b)(5) & cmt. n.1; *see also Holloway v. United States*, 526 U.S. 1, 9 (1999) ("The carjacking statute essentially is aimed at providing a federal penalty for a particular type of robbery.").

[4] We recognize that, as a general rule, we do not cite non-precedential opinions.  *See Garcia v. Att'y Gen.*, 553 F.3d 724, 728 n.5 (3d Cir. 2009); *see also* Third Circuit Internal Operating Procedure 5.7 (indicating that non-precedential "opinions are not regarded as precedents that bind the court because they do not circulate to the full court

We agree with that decision and adopt the rule stated in *Grey* that temporary takings of property may justify application of the loss enhancement. This is in accord with opinions from several of our sister courts of appeals. *See United States v. Allen*, 516 F.3d 364, 380-81 (6th Cir. 2008) (including property over which the defendant exercised only temporary dominion and control in loss analysis); *United States v. Cruz-Santiago*, 12 F.3d 1, 3 (1st Cir. 1993) (same); *United States v. Parker*, 903 F.2d 91, 105 (2d Cir. 1990) (same). As then-Chief Judge Stephen Breyer, writing for the U.S. Court of Appeals for the First Circuit in *Cruz-Santiago*, explained, "the Guidelines do not limit the Commentary's word 'taken' to circumstances involving a '*permanent*' deprivation of property." 12 F.3d at 3.

On the record before it, the District Court properly applied the loss enhancement because Smith exercised dominion and control, albeit temporarily, over the vehicle when he coerced Whiting, against her will and at gunpoint, to drive to the bank. Whiting's later escape did not erase that taking. Smith himself seems to acknowledge that reality, given his approval of the jury instructions on carjacking. Those instructions provided that "[t]o take a motor vehicle means to acquire possession or control of the vehicle for a period of time. The government does not have to prove that the defendant intended to permanently deprive the owner of possession of the vehicle." (App. at 627.) Relying on those instructions, the jury convicted Smith of carjacking. The jury's finding thus undermines Smith's contention that he "never exercised dominion and control over the Ford

before filing"). We cite *Grey* here to summarize the foundation of the District Court's reasoning.

12

Explorer." (Appellant's Opening Br. at 19.) There was ample basis in the record to support the District Court's determination that Smith "took" Whiting's vehicle, and the application of the loss enhancement in § 2B3.1(b)(7)(A) was procedurally sound.

### III. Conclusion

For the foregoing reasons, we will affirm the judgment of conviction and sentence.