NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2629
_____

UNITED STATES OF AMERICA

v.

TYREEK STYLES,
a/k/a "Reek"

Tyreek Styles,
Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(E.D. Pa. No. 2-13-cr-00030-001)
District Judge:  Honorable Petrese B. Tucker
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
June 21, 2016

Before:  FISHER, GREENAWAY, JR. and ROTH *Circuit Judges*.

(Filed: August 12, 2016)
_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

FISHER, *Circuit Judge*.

Tyreek Styles was convicted of conspiracy to commit Hobbs Act robbery, Hobbs Act robbery, and using a firearm during a crime of violence. He was sentenced to 240 months' imprisonment. He now appeals the district court's denial of his motions under Federal Rules of Criminal Procedure 29 and 33, along with the district court's application of two sentencing enhancements: a four-level enhancement for abduction and a two-level enhancement for obstruction of justice. We will affirm Styles's conviction but vacate the sentence and remand for resentencing based on the district court's two-level enhancement for obstruction of justice.

## I.

We write principally for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts that are necessary to our analysis.

Tyreek Styles was one of five men who committed armed robbery of an Upper Darby residence. It was after midnight on December 3, 2011, when Styles and his three confederates, all wearing gloves and masks, approached the house of Tam Dang and Dung Tran and their children. The robbers were armed with a pistol and a stun gun. They parked out front in a gold-colored Chevy Malibu that belonged to Styles. Shortly after that, Tam Dang and his son returned from the family's deli. After Dang's son went inside the house, the robbers attacked Dang and beat him unconscious. Styles and his fellow

assailants then entered the house. They pushed Dang's son to the ground and told Tran, at gunpoint, to get to the floor. The men moved the victims to the living room and held them down. Two of the men went upstairs and into Dang's daughter's room, where she awoke and began to scream. They hit her head against the wall, threatened her with the gun, demanded her silence, and then took her to the living room to join her brother and mother.

The men asked where the money was. One of the men took Dang's son upstairs at gunpoint and made the boy get his coin collection from his bedroom. The robber ransacked the boy's room. Meanwhile, the other robbers took Tran and her daughter to another bedroom and took money from Tran's purse. The robbers searched the rest of the house, where they collected money, a cell phone, and credit cards. Then the men fled the house, leaving behind their stun gun. While the men ran away, Dang's son yelled for help, and one of the robbers turned around and fired a gun in his direction. The bullet became lodged in the second-floor-bedroom ceiling of a neighbor's house. The men left the Chevy Malibu where it was parked and fled on foot.

Sean Kenny, a local police officer, responded to the report of the shooting. On his way to the site, he saw two men—Tyreek Styles and his brother Tyrone Styles—running in the other direction and talking to each other. Tyreek continued to run, but Tyrone jumped over a bridge and held on with one hand. When Officer Kenny grabbed Tyrone's hand, Tyrone let go of the railing and fell to the creek below. Tyrone ran away but left

behind a Ruger revolver (with one spent round) and about $130 in cash. The bullet that was recovered from Dang's neighbor's ceiling matched the Ruger. Near the scene, the officers searched a trash can and found within it a black zip-up sweatshirt, a black knit cap, a piece of black fabric, and white knit gloves.

Officers at the scene that night saw the gold-colored Chevy Malibu and touched the hood, which was still warm. They discovered that the car was registered to Tyreek Styles, so they searched driver's license databases for "Styles," "Tyr," and "Philadelphia." This produced three matches: Tyrone Styles, Tyreek Styles, and Tyrell Styles. Officer Kenny looked at photographs of the three men and identified Tyrone Styles as the man who jumped off the bridge. The day after the robbery, the officers obtained a search warrant for Styles's Malibu and when they searched it they found the following: a résumé for Jeremiah Stokes with a phone number; a letter written to Stokes, which explained how to rob a business owner; latex gloves; black fabric that matched the fabric recovered from the trash can; a vehicle registration with Tyreek Styles's name; and a cellphone receipt with Styles's number.

The next day, Styles came to the Upper Darby Police Department to ask about his Chevy Malibu. He told a detective that the car had overheated and so he had parked it where the police later found it. He said he had run away when he heard shooting and, when he had encountered Officer Kenny, had told him where the shots were coming from. The officers asked Styles why he had been talking with the man who jumped off

4

the bridge. Styles became nervous. The police then asked him for his phone and the code to unlock it, and Styles gave them both. He also voluntarily provided a DNA sample. The phone contained an entry for Jeremiah Stokes. The officers obtained Stokes's cell phone records, which revealed that Stokes was in the vicinity of the crime scene when the robbery occurred and that he had called Styles about four minutes after police responded to the emergency. Both the stun gun that the assailants left in the victims' house and cloth recovered from the trash can were tested for DNA and matched Tyreek Styles.

Styles was charged with conspiracy to commit Hobbs Act robbery;[1] two counts of Hobbs Act robbery and aiding and abetting Hobbs Act Robbery; and two counts of using and carrying a firearm during a crime of violence in violation of 18 U.S.C. § 924(c), and aiding and abetting that offense.[2] Styles proceeded to trial. Jeremiah Stokes and Tyrone Styles testified that Tyreek Styles was a member of the conspiracy and described his involvement in the robbery. Styles was convicted of conspiracy to commit Hobbs Act robbery, one count of Hobbs Act robbery, and the related § 924(c) offense.[3]

The district court sentenced Styles to 240 months' imprisonment. Styles's base offense level was 20, and the district court applied two four-level enhancements: the first

---

[1] 18 U.S.C. § 1951(a).
[2] One count of robbery and one count of using and carrying a firearm pertained to an earlier robbery. Because Styles was found not guilty with respect to that earlier robbery, we do not discuss it here.
[3] Styles's convictions all pertain to the December 2011 robbery described above.

because one of the victims sustained serious bodily injury,[4] and the second for abduction.[5] The district court also applied a two-level enhancement for obstruction of justice based on Styles's statements to police when he came to the station to ask about his impounded car.[6] Styles's total offense level was 30, and his criminal history category was II. The Guidelines range for the robbery counts was 108 to 135 months, and a mandatory consecutive term of 120 months was imposed for the § 924(c) count.

## II.[7]

Styles appeals the district court's denial of his Rule 29 and Rule 33 motions; the application of the four-level enhancement for abduction; and the two-level enhancement for obstruction of justice.

## A.

We exercise de novo review of a district court's decision on a Rule 29 motion for acquittal "and independently apply the same standard the district court uses in deciding the motion."[8] We review the evidence presented at trial in the light most favorable to the government to determine whether any rational trier of fact could find each essential element of the crime beyond a reasonable doubt.[9]

---

[4]  U.S.S.G. § 2B3.1(b)(3)(B).
[5]  U.S.S.G. § 2B3.1(b)(4)(A).
[6]  U.S.S.G. § 3C1.1.
[7]  The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).
[8]  *United States v. Caraballo–Rodriguez*, 726 F.3d 418, 424 (3d Cir. 2013) (en banc).
[9]  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citation omitted).

Styles contends that the evidence was insufficient to support the jury's findings that he violated § 924(c), that he was guilty of conspiracy to commit Hobbs Act robbery, or that he committed Hobbs Act robbery.

According to Styles, the jury should not have convicted him of the § 924(c) offense because there was no evidence that he knew a firearm would be used during the commission of the robbery. In order to convict a defendant of a § 924(c) offense, the government must prove "that the defendant actively participated in the underlying drug trafficking or violent crime with advance knowledge that a confederate would use or carry a gun during the crime's commission."[10] Styles argues that the government failed to present such evidence. But this argument is belied by the record. There was testimony that the coconspirators had discussed the use of the gun in advance; that in preparation for the robbery they packed a gun along with their other supplies; and that, as they were driving to the scene of the crime and discussing the details of the robbery, one of the confederates took the gun and handed it to another. Considering this evidence in the light most favorable to the government, a rational jury could find that Styles knew a gun would be used during the robbery. Accordingly, there was sufficient evidence for the jury to convict Styles of the § 924(c) offense.

Styles's convictions for conspiracy and Hobbs Act robbery were also supported by the evidence. Two of Styles's confederates—Jeremiah Stokes and Tyrone Styles—

---

[10]  *Rosemond v. United States*, 134 S. Ct. 1240, 1243 (2014).

testified against him, describing in detail his involvement in the planning and commission of the robbery. Other evidence corroborated this testimony. For instance, the police found Styles's car parked across the street from the victims' house minutes after the robbery. The items in the car linked Styles to Stokes and to the robbery. The stun gun found at the victims' house contained Styles's DNA. Cell phone records established that Stokes had called Styles just minutes after the police responded to the scene. Finally, Officer Kenny saw Styles running away from the scene with Tyrone Styles. Styles's argument that he was merely a knowing spectator fails—a rational jury could, based on the evidence presented at trial, conclude that Styles was a member of the conspiracy and helped commit the robbery. As such, Styles's convictions for conspiracy and robbery were supported by sufficient evidence.

Styles argues in the alternative that the district court erred in denying his Rule 33 motion. We review a district court's decision on a Rule 33 motion for a new trial for abuse of discretion.[11] A new trial is warranted if the jury's verdict is contrary to the weight of the evidence and if "there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted."[12] For the foregoing reasons, the district court correctly denied relief under Rule 33. We will accordingly affirm Styles's convictions.

---

[11]  *See United States v. Jasin*, 280 F.3d 355, 360 (3d Cir. 2002).

[12]  *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002) (quoting *United States v. Santos*, 20 F.3d 280, 285 (7th Cir. 1994)).

B.

We review a district court's interpretation of the Sentencing Guidelines de novo and its factual findings for clear error.[13] Styles claims that the district court erred in applying a four-level enhancement for abduction. The Guidelines provide for a four-level enhancement "[i]f any person was abducted to facilitate commission of the offense or to facilitate escape."[14] For the abduction enhancement to apply, three predicates must be met: (1) the victims must be forced to move from their original location with sufficient force "to permit a reasonable person an inference that he or she is not at liberty to refuse"; (2) "the victims must accompany the offender to that new location"; and (3) the relocation of the victims must further the commission of the crime or the escape.[15] We held that these three predicates were met in *Reynos*, where the victims were forced to move approximately thirty feet from the bathroom of a pizza shop to the cash register area of the store.[16] Thus, the abduction enhancement may be proper even where victims were moved only within a single structure.

Styles acknowledges that the victims in this case were moved from the first to the second floor of the residence. He nevertheless suggests that the enhancement should not have been applied for a number of reasons: he did not personally restrain the victims who were moved; the movement of victims was not in furtherance of the robbery because the

---

[13]   *United States v. Grier*, 475 F.3d 556, 570 (3d Cir. 2007).
[14]   U.S.S.G. § 2B3.1(b)(4)(A).
[15]   *United States v. Reynos*, 680 F.3d 283, 286–87 (3d Cir. 2012).
[16]   *Id.* at 291.

robbers had access to the entire house even without moving the victims; and this case involved nothing more than would typically happen in a robbery. These arguments are unavailing. The robbers used weapons and force to move the victims from one part of the house to another; they accompanied the victims to the new location; and they did so while demanding that the victims show them where the money was. Under our precedent, this is sufficient for the application of the abduction enhancement, and the district court did not abuse its discretion in applying it.

C.

The Guidelines provide for a two-level sentencing enhancement if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing" of the offense.[17] Styles claims that the district court wrongly applied this enhancement. Although the government proposed this sentencing enhancement, it now concedes that it should not have done so and that the district court erred in applying it.

The application notes provide guidance for determining whether the enhancement should apply.[18] The notes provide non-exhaustive lists of the types of conduct that would

---

[17]    U.S.S.G. § 3C1.1.

[18]    *See United States v. Booth*, 432 F.3d 542, 548 n.8 (3d Cir. 2005) ("We have stated that an application note to the Sentencing Guidelines is binding 'unless it runs afoul of the Constitution or a federal statute, or is plainly erroneous or inconsistent with the section of the guidelines it purports to interpret.'" (quoting *United States v. McQuilkin*, 97 F.3d 723, 731 (3d Cir. 1996))).

and would not be covered by § 3C1.1.[19] Relevant to this case, Note 4(G) explains that the following would be covered by the enhancement: "providing a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instant offense."[20] On the other hand, Note 5(B) explains that "making false statements, not under oath, to law enforcement officers" would not be covered by the enhancement, unless Note 4(G) applies.[21] In other words, a false statement to law enforcement officers is not on its own enough to qualify as obstruction—false statements must be material[22] and must actually obstruct the investigation or prosecution of the offense in a significant way.

Here, the government concedes that Styles's conduct does not rise to the level of obstruction because none of Styles's statements impeded the investigation in this case.[23] By the time Styles spoke to police officers, they had already searched his car and found evidence linking him to the robbery and to one of his confederates. Furthermore, Styles turned over his cell phone to police, along with the code to unlock it, which allowed the officers to access information that was important to the investigation. Finally, Styles voluntarily provided a DNA sample to police.

---

[19] As a general matter, "[a] defendant's denial of guilt (other than a denial of guilt under oath that constitutes perjury) . . . is not a basis for application of this provision." U.S.S.G. § 3C1.1 cmt. n.2.

[20] U.S.S.G. § 3C1.1 cmt. n.4(G).

[21] U.S.S.G. § 3C1.1 cmt. n.5(B).

[22] A "material" statement is one that, "if believed, would tend to influence or affect the issue under determination." U.S.S.G. § 3C1.1 cmt. n.6.

[23] We do question why the government requested the application of an enhancement that it now so unequivocally acknowledges was inappropriate.

11

We agree that the obstruction enhancement was not applicable in this case. Its application by the district court was thus procedural error.[24] Accordingly, we will remand for resentencing.

## III.

We will affirm Styles's conviction, but, because the district court should not have applied the two-level enhancement for obstruction of justice, we will vacate his sentence.

---

[24] *United States v. Wright*, 642 F.3d 148, 152 (3d Cir. 2011) (explaining that failing to make a correct computation of the Guidelines range is procedural error that generally requires resentencing).